IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | |
|---|---|
| **BLUE SPIKE, LLC,** § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> **CATERPILLAR, INC.,** § <br> **BARNES & NOBLE, INC.,** § <br> **BARNESANDNOBLE.COM LLC,** § <br> **NOOK DIGITAL LLC,** § <br> **PANTECH WIRELESS, INC., &** § <br> **POLAROID CORPORATION** § <br> § <br> *Defendants*. § | Civil Action No. 6:16-cv-1361 <br><br> JURY TRIAL DEMANDED |

**AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Blue Spike, LLC files this complaint against Defendants Barnes & Noble, Inc. and barnesandnoble.com llc ("Barnes & Noble"), Caterpillar Inc. ("Caterpillar"), Pantech Wireless, Inc. ("Pantech"), and Polaroid Corporation ("Polaroid"), alleging infringement of U.S. Patent No. 5,745,569, entitled "Method for Stega-Cipher Protection of Computer Code" (the "'569 Patent") and U.S. Patent No. 8,930,719, entitled "Data Protection Method and Device" (the "'719 Patent," and collectively with the '569 Patent, the "Patents-in-Suit") as follows:

**NATURE OF THE SUIT**

1.  This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

**PARTIES**

2.     Plaintiff Blue Spike, LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike, LLC is the assignee of the Patents-in-Suit, and has ownership of all substantial rights in the Patents-in-Suit, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

3.     On information and belief, Caterpillar Inc. is a company organized and existing under the laws of Delaware, with a principal place of business at 100 NE Adams Street, Peoria, IL 61629.  Caterpillar Inc. may be served through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

4.     On information and belief, Barnes & Noble, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 122 Fifth Avenue, New York, New York 10011. Barnes & Noble, Inc. is registered in the state of Texas and may be served through its registered agent, Capitol Corporate Services, Inc., at 800 Brazos, Suite 400, Austin, Texas 78701.

5.     On information and belief, barnesandnoble.com llc is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 76 9th Avenue, New York, New York 10011. barnesandnoble.com llc may be served through its registered agent, Capitol Services, Inc., at 1675 S. State St., Suite B, Dover, Delaware 19901.  On or about May 2015, Defendant Nook Digital LLC became a successor in interest of barnesandnoble.com.  Defendant Nook Digital is a subsidiary of Barnes and Noble Bookseller, Inc., which is not currently named as a defendant in this

matter. Defendant Nook Digital, LLC, is located at 76th Ninth Ave, 9th Floor, NY, NY 10011 and may be served through its registered agent Capitol Services, Inc., at 1218 Central Avenue, Suite 100, Albany, NY 12205.

6. On information and belief, Pantech Wireless, Inc. is a corporation organized and existing under the laws of Georgia with its principal place of business at 5607 Glenridge Drive, Suite 500, Atlanta, Georgia 30342. Pantech Wireless, Inc. may be served through its registered agent Kathleen Elizabeth Jones at 5607 Glenridge Drive, Suite 500, Atlanta, GA 30342.

7. On information and belief, Polaroid Corporation is a company organized and existing under the laws of Delaware, with a principal place of business at 1265 Main Street, Waltham, MA 02451. Polaroid Corporation may be served through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

**JURISDICTION AND VENUE**

8. This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

**A.   Defendant Caterpillar**

9. The Court has personal jurisdiction over Defendant Caterpillar for at least four reasons: (1) Caterpillar has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Caterpillar regularly does business or solicits business in this District and in Texas; (3) Caterpillar engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in this District and in

Texas; and (4) Caterpillar has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

10. Specifically, Caterpillar has partnered with numerous resellers and distributors to sell and offer for sale infringing products to consumers in this District and in Texas, both online and in stores (*see, e.g.*, Exhibits D1 & D2); Caterpillar operates a website that solicits sales of infringing products to consumers in this District and Texas (*see* Exhibit D3); Caterpillar offers telephonic and electronic support services to customers in this District and Texas (*see* Exhibit D4); and is registered with the Texas Secretary of State (*see* above). Given these extensive contacts, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

11. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Caterpillar does business in the State of Texas, Caterpillar has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's claims happened in the District, and Caterpillar is subject to personal jurisdiction in the District.

**B.  Defendant Barnes & Noble**

12. The Court has personal jurisdiction over Defendant Barnes & Noble (including Nook Digital, LLC) for at least four reasons: (1) Barnes & Noble has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Barnes & Noble regularly does business or solicits business in this District and in Texas; (3) Barnes & Noble engages in other persistent courses of conduct and derives substantial revenue from products and/or

services provided to individuals in this District and in Texas; and (4) Barnes & Noble has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

13.   Specifically, Barnes & Noble (including Nook Digital, LLC) has partnered with numerous resellers and distributors to sell and offer for sale infringing products to consumers in this District and in Texas, both online and in stores (*see*, *e.g.*, Exhibits C1 & C2); Barnes & Noble operates a website that solicits sales of infringing products by consumers in this District and Texas (*see* Exhibit C3); Barnes & Noble offers telephonic and e-mail support services to customers in this District and Texas (*see* Exhibit C4); and is registered with the Texas Secretary of State (*see* above). Given these extensive contacts, the Court's exercise of jurisdiction over Barnes & Noble will not offend traditional notions of fair play and substantial justice.

14.   Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Barnes & Noble does business in the State of Texas, Barnes & Noble has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's claims happened in the District, and Barnes & Noble is subject to personal jurisdiction in the District.

**C.    Defendant Pantech**

15.   The Court has personal jurisdiction over Defendant Pantech for at least four reasons: (1) Pantech has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Pantech regularly does business or solicits business in this District and in Texas; (3) Pantech engages in other persistent courses of conduct and derives substantial revenue

from products and/or services provided to individuals in this District and in Texas; and (4) Pantech has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

16. Specifically, Pantech has partnered with resellers and distributors to sell and offer for sale infringing products to consumers in this District and in Texas, both online and in stores (*see*, *e.g.*, Exhibits E1 & E2); Pantech operates a website that solicits sales of infringing products to consumers in this District and Texas (*see* Exhibits E3 & E4); Pantech offers telephonic and e-mail support services to customers in this District and Texas (*see* Exhibit E5); and Pantech offers software for download by customers in this District and Texas (*see* Exhibit E6). Given these extensive contacts, the Court's exercise of jurisdiction over Pantech will not offend traditional notions of fair play and substantial justice.

17. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Pantech does business in the State of Texas, Pantech has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's claims happened in the District, and Pantech is subject to personal jurisdiction in the District.

**D.     Defendant Polaroid**

18. The Court has personal jurisdiction over Defendant Polaroid for at least four reasons: (1) Polaroid has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Polaroid regularly does business or solicits business in this District and in Texas; (3) Polaroid engages in other persistent courses of conduct and derives substantial

revenue from products and/or services provided to individuals in this District and in Texas; and (4) Polaroid has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

19. Specifically, Polaroid has partnered with resellers and distributors to sell and offer for sale infringing products to consumers in this District and in Texas (*see*, *e.g.*, Exhibits F1, F2 & F3), Polaroid operates a website that solicits sales of infringing products to consumers in this District and Texas (*see* Exhibits F4 & F5); Polaroid offers telephonic and electronic support services to customers in this District and Texas (*see* Exhibit F6); and is registered with the Texas Secretary of State (*see* above). Given these contacts, the Court's exercise of jurisdiction over Polaroid will not offend traditional notions of fair play and substantial justice.

20. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Polaroid does business in the State of Texas, Polaroid has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's claims happened in the District, and Polaroid is subject to personal jurisdiction in the District.

## FACTUAL BACKGROUND

### A. Moskowitz's History

21. Protection of intellectual property is a prime concern for creators and publishers of digitized copies of copyrightable works, such as musical recordings, movies, video

games, and computer software. Blue Spike founder Scott Moskowitz pioneered—and continues to invent—technology that makes such protection possible.

22. Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International Society for Optics and Photonics (SPIE). As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publications.

23. Moskowitz is an inventor of more than 100 patents, including forensic watermarking, signal abstracts, data security, software watermarks, product license keys, deep packet inspection, license code for authorized software and bandwidth securitization.

24. The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications. The NSA made the application classified under a "secrecy order" while it investigated his pioneering innovations and their impact on national security.

25. As an industry trailblazer, Moskowitz has been a public figure and an active author on technologies related to protecting and identifying software and multimedia content. A 1995 *New York Times* article—titled "TECHNOLOGY: DIGITAL COMMERCE; 2 plans for watermarks, which can bind proof of authorship to electronic works"—recognized Moskowitz's company as one of two leading software start-ups in this newly created field. *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of

digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

26. Moskowitz has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking creates. Moskowitz also authored *So This Is Convergence?*, the first book of its kind about secure digital-content management. This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi*, literally "electronic watermark." Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights Management*, a 2006 book explaining digital-rights management. Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security, Robustness and Quality." He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

27. Moskowitz and Blue Spike continue to invent technologies that protect intellectual property from unintended use or unauthorized copying.

**B.    The Accused Technology**

28. Address Space Layout Randomization ("ASLR") is a security technique that protects software by shuffling it in computer memory. Prior to implementing ASLR, modern-day operating systems often loaded software into predictable memory locations. That predictability allowed attackers to pinpoint specific potions of software and manipulate them in unintended ways. In response to this grave threat, many operating

9

systems now utilize ASLR to reduce predictability by shuffling software to random memory locations.

29. The Android Operating System ("Android" or "Android OS") utilizes ASLR technology to protect itself and other software from abuse. Android began implementing ASLR technology as early as version 2, and advertised more robust implementations by versions 4 and 4.1.

C. **The Accused Products**

30. Defendant Barnes & Noble designs, develops, employs, and/or manufactures ASLR software, systems, and/or technology. Barnes & Noble makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its Nook, Nook HD, Nook HD+, Nook Tablet 7", Nook Tablet 9", and Samsung Galaxy Tab NOOK series of devices (collectively, the "Barnes & Noble Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the Barnes & Noble Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

31. Barnes & Noble has not sought or obtained a license for any of Blue Spike's patented technologies.

32. Yet the Barnes & Noble Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

33. Defendant Caterpillar designs, develops, employs, and/or manufactures ASLR software, systems, and/or technology. Caterpillar makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its

CAT S30, CAT S40, CAT S50, CAT S60, and CAT S60 GSM series of smartphones (collectively, the "Caterpillar Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

34. Caterpillar has not sought or obtained a license for any of Blue Spike's patented technologies.

35. Yet the Caterpillar Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

36. Defendant Pantech designs, develops, employs, and/or manufactures ASLR software, systems, and/or technology. Pantech makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its Perception, Discover, Flex, Marauder, and Pocket series of smartphones and its Element series of tablets (collectively, the "Pantech Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the Pantech Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

37. Pantech has not sought or obtained a license for any of Blue Spike's patented technologies.

38. Yet the Pantech Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

39. Defendant Polaroid designs, develops, employs, and/or manufactures ASLR software, systems, and/or technology. Defendant makes, uses, offers for sale and/or

imports into the U.S. products, systems, and/or services including, but not limited to, its LINK, Snap, and Power series of smartphones and its 7", 8", 9", A7, A8, A900, P700, P900, P902, P935, Q10, S8, & S10 models and series of tablets (collectively, the "Polaroid Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the Polaroid Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

40.     Polaroid has not sought or obtained a license for any of Blue Spike's patented technologies.

41.     Yet the Polaroid Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

42.     Collectively, the Barnes & Noble Accused Products, the Caterpillar Accused Products, the Polaroid Accused Products, and the Pantech Accused Products are the "Accused Products."

## COUNT 1:
## INFRINGEMENT OF U.S. PATENT NO. 5,745,569

43.     Blue Spike incorporates by reference the allegations in paragraphs 1 through 49 above in this Complaint.

44.     The '569 Patent is valid, is enforceable, and was duly and legally issued on April 28, 1998.  A true and correct copy of the '569 Patent is attached to this Complaint as Exhibit A.

45.     Without a license or permission from Blue Spike, Defendants have infringed and continues to infringe on one or more claims of the '569 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

46. Defendants have been and now are directly infringing by, among other things, practicing all of the steps of the '569 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '569 Patent. Specifically, Defendants manufacture and/or import the Accused Products into the United States; have partnered with numerous resellers to offer for sale and sell the Accused Products in the United States, in numerous stores and websites (*see, e.g.*, Exhibits C1, C2, D1, D2, E1, E2, E3, F1, F2 & G1); operate their own websites that offer for sale and sell the Accused Products to consumers in Texas and this District (*see, e.g.*, Exhibits C3, D3, E4, E5, F4 & G2), generate revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see id.*); and have attended trade shows in the United States where they have demonstrated the Accused Products (*see, e.g.*, Exhibits F7 & G4).

47. Defendants have been and now are indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '569 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '569 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '569 Patent. By making, using, importing offering for sale, and/or selling such products, Defendants injured Blue Spike and are thus liable to

Blue Spike for infringement of the '569 Patent under 35 U.S.C. § 271. Those whom Defendants induce to infringe and/or to whose infringement Defendants contribute are the end users of the Accused Products. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004). Defendants had knowledge of the '569 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '569 Patent by actively inducing infringement and/or is liable as contributory infringers of one or more claims of the '569 Patent under 35 U.S.C. § 271.

48.     Defendants' acts of infringement of the '569 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendants the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendants' infringement of Blue Spike's exclusive rights under the '569 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

49.     On information and belief, the infringement of the '569 Patent by Defendants have been willful and continues to be willful. Defendants knew or should have known that its incorporation of the accused technology in their Accused Products represented an objectively high likelihood of infringing the '569 Patent. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). Defendants had knowledge of the '569 Patent, including but not limited to at least one or more of the following:

   a.     The '569 patent has been forward-cited as prior art in connection with the examination of at least 300 subsequently-issued U.S. patents, including Microsoft in its patent titled "License-based cryptographic technique, particularly suited for use in a

digital rights management system, for controlling access and use of bore resistant software objects in a client computer," Digimarc in its patent titled "Anti-piracy system for wireless telephony," AT&T in multiple patents including one of its U.S. Patent titled "Protected IP telephony calls using encryption," NEC in its U.S. Patent titled "Method and system for protecting digital data from unauthorized copying," Matsushita Electric Industrial in its U.S. Patent titled "Active data hiding for secure electronic media distribution," and multiple other well-known companies and government agencies, including The U.S. Army, Intertrust Technologies, Texas Instruments, Dell Products, Intel, ShieldIP, Borland Software Company, Avaya Inc., Shoretel Inc., and Syndata Technologies.

      b.      The filing and service of this Complaint.

50.      On information and belief, Defendants have at least had constructive notice of the '569 Patent by operation of law.

## COUNT 2:
## INFRINGEMENT OF U.S. PATENT NO. 8,930,719

51.      Blue Spike incorporates by reference the allegations in paragraphs 1 through 57 above in this Complaint.

52.      The '719 Patent is valid, is enforceable, and was duly and legally issued on January 6, 2015. A true and correct copy of the '719 Patent is attached to this Complaint as Exhibit B.

53.      Without a license or permission from Blue Spike, Defendants have infringed and continue to infringe on one or more claims of the '719 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

54.     Defendants have been and now are directly infringing by, among other things, practicing all of the steps of the '719 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '719 Patent.  Specifically, Defendants manufacture and/or import the Accused Products into the United States; have partnered with numerous resellers to offer for sale and sell the Accused Products in the United States, in numerous stores and websites (*see*, *e.g.*, Exhibits C1, C2, D1, D2, E1, E2, E3, F1, F2 & G1); operate their own websites that offer for sale and sell the Accused Products to consumers in Texas and this District (*see*, *e.g.*, Exhibits C3, D3, E4, E5, F4 & G2), generate revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see id.*); and have attended trade shows in the United States where they have demonstrated the Accused Products (*see*, *e.g.*, Exhibits F7 & G4).

55.     Defendants have been and now are indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '719 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '719 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '719 Patent. By making, using, importing offering for sale, and/or selling such products, Defendants injured Blue Spike and are thus liable to

Blue Spike for infringement of the '719 Patent under 35 U.S.C. § 271. Those whom Defendants induce to infringe and/or to whose infringement Defendants contribute are the end users of the Accused Products. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004). Defendants had knowledge of the '719 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '719 Patent by actively inducing infringement and/or is liable as contributory infringers of one or more claims of the '719 Patent under 35 U.S.C. § 271.

56. Defendants' acts of infringement of the '719 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendants the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendants' infringement of Blue Spike's exclusive rights under the '719 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

57. On information and belief, the infringement of the '719 Patent by Defendants have been willful and continues to be willful. Defendants knew or should have known that its incorporation of the accused technology in their Accused Products represented an objectively high likelihood of infringing the '719 Patent. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). Defendants had knowledge of the '719 Patent, including but not limited to at least one or more of the following:

    a. The filing of Plaintiff's prior lawsuits asserting the '719 Patent against five major smartphone manufacturers—Xiaomi, Huawei, Infosonics, DDM Brands, and ZTE (consolidated as *Blue Spike, LLC v. Beijing Xiaomi Technology Co. Ltd. et al.*

(E.D. Tex.) Case No. 2:15-CV-01785)—which has been widely publicized and reported upon—*see*, *e.g.*, "China's Xiaomi slapped with patent-infringement suit by Blue Spike in US over upcoming Mi 5, Mi 5 Plus smartphones" *South China Morning Post* (Dec. 9, 2015), available at http://www.scmp.com/tech/enterprises/article/1889024/chinas-xiaomi-slapped-patent-infringement-suit-blue-spike-us-over and attached as Exhibit H.

      b.      The filing and service of this Complaint.

58.      On information and belief, Defendants have at least had constructive notice of the '719 Patent by operation of law.

## REQUEST FOR RELIEF

Blue Spike incorporates each of the allegations in paragraphs 1 through 65 above and respectfully asks the Court to:

(a)      enter a judgment that Defendants have directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patents-in-Suit;

(b)      enter a judgment awarding Blue Spike all damages adequate to compensate it for Defendants' infringement of, direct or contributory, or inducement to infringe, the Patents-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)      enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendants' willful infringement of one or more of the Patents-in-Suit;

(d)      issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendants, their directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and

assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit;

(e) enter a judgment requiring Defendants to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f) award Blue Spike all other relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Blue Spike demands a jury trial on all issues that may be determined by a jury.

    Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (888) 908-4400

Kirk J. Anderson
  California Bar No. 289043
  kanderson@ghiplaw.com
Ian Ramage
  California Bar No. 224881
  iramage@ghiplaw.com
**GARTEISER HONEA, P.C.**
44 North San Pedro Road
San Rafael, California 94903
Telephone: (415) 785-3762
Facsimile: (415) 785-3805

*Counsel for Blue Spike, LLC*